**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**THOMAS SCOTT SMITH,**

    Plaintiff,

v.                                                         **CIVIL ACTION NO. 3:13-CV-17
(JUDGE GROH)**

**CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION AND OVERRULING OBJECTIONS**

On February 18, 2013, Plaintiff Thomas Scott Smith filed this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's decision denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. See 42 U.S.C. §§ 401-433. On May 2, 2013, the Commissioner filed her Answer. On June 1, 2013, Smith filed his Motion for Summary Judgment. On June 21, 2013, the Commissioner filed her Motion for Summary Judgment.

On August 23, 2013, Judge Seibert issued a report and recommendation [Doc. 18]. Judge Seibert recommended that Smith's Motion for Summary Judgment be denied because (1) substantial evidence supported the ALJ's finding that jobs existed in significant numbers in the national economy that Smith could have performed given his age, education, work experience, and residual functional capacity ("RFC"); (2) the ALJ adequately accounted for all of Smith's limitations in the RFC; and (3) substantial

1

evidence supported the ALJ's finding that Smith's subjective statements concerning his symptoms and limitations were not entirely credible.

## I. Background

On January 18, 2007, Smith applied for Disability Insurance Benefits (Title II) and Supplemental Security Income (Title XVI) due to injuries he sustained in a work accident on June 28, 2005. On March 5, 2007, the application was initially denied. On June 15, 2007, reconsideration of the application was denied. On January 22, 2010, Smith filed a second application for Title II benefits stemming from the same accident. On March 15, 2010, the second application was denied. On May 27, 2010, reconsideration of the second application was denied.

Then, Smith requested a hearing before an administrative law judge ("ALJ"). On November 3, 2011, the ALJ held a hearing. Smith was represented by counsel. At the hearing, Smith and an impartial Vocational Expert ("VE") testified. On December 12, 2011, the ALJ issued an unfavorable decision, finding that Smith was not disabled. Specifically, the ALJ found that Smith did not engage in substantial gainful activity during the period from his alleged onset date of June 28, 2005 through his last insured date of September 30, 2008. The ALJ also found that Smith suffered from severe medically determinable impairments that significantly limit his ability to perform basic work activities for at least twelve consecutive months including a "[h]istory of traumatic brain injury, status post craniotomy and repair of CSF leak, [r]ight peripheral seventh palsy including facial droop, [r]ight side hearing loss, '[n]on-[s]evere' [r]ight thumb avulsion, [r]educed vision right side, and a [h]istory of methadone abuse/use." However, the ALJ found that Smith did not have an impairment or combination of impairments that met or medically equaled the severity

2

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ also found that, during the period at issue, Smith had the RFC to perform a range of work activity that:

> require[d] no more than a "light" level of physical exertion; entail[ed] no balancing or climbing of ladders/ropes/scaffolds and no more than occasional performance of other postural activities (i.e.[,] stooping, kneeling, crouching, crawling, climbing of ramps/stairs); entail[ed] no concentrated exposure to hot and cold temperature extremes, vibrations, noises, and irritants (such as fumes, odors, dust, gases, and poorly ventilated areas); entail[ed] no more than a moderate noise intensity level; requir[ed] no fine visual acuity nor night vision; entail[ed] simple, routine and repetitive tasks with no strict production standards; entail[ed] only occasional changes in work setting; and require[d] only occasional decision making.

R. 16. Based on this RFC, the ALJ found that Smith was unable to perform his past relevant work. However, the ALJ relied upon the VE's testimony to conclude that Smith could have performed work existing in the national economy and that he was not disabled within the meaning of the Social Security Act.

On December 12, 2011, Smith appealed the ALJ's decision to the Appeals Council. On December 20, 2012, the Appeals Council denied review of the ALJ's decision. Thereafter, Smith filed this action.

## II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the report and recommendation under the standards that the district court believes are appropriate, and if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Therefore, this

3

Court will conduct a *de novo* review only as to those portions of the report and recommendation to which Smith objected. The remaining portions of the report and recommendation will be reviewed for clear error.

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Perales, 402 U.S. at 401 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 528 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").

### III. Discussion

Smith raises three objections: (1) the report and recommendation incorrectly

concludes that he must bring any inconsistency between the VE's testimony and the DOT[1] to the ALJ's attention; (2) the report and recommendation incorrectly concludes there is no inconsistency between the position of handwasher and his RFC; and (3) the report and recommendation failed to identify the consistencies between his testimony and the medical evidence of record and instead relied on the ALJ's failure to properly evaluate his credibility under step two of Craig v. Chater and 20 C.F.R. 404 by erroneously interpreting the record. The Commissioner filed a response to each of Smith's objections. Therefore, this Court will analyze each objection and response.

### A. The ALJ Satisfied Social Security Ruling 00-4p

Smith objects to the report and recommendation's conclusion that because he failed to raise inconsistencies between the VE's testimony and the DOT to the ALJ, the ALJ did not have to resolve any conflicts between the VE's testimony and the DOT. Smith contends that this proposition directly conflicts with the plain meaning of SSR 00-4p. The Commissioner argues, although Smith declined to question the VE at the hearing and now contests the VE's testimony, the ALJ fulfilled his legal duty by asking the VE at the hearing whether his testimony had been "consistent to and in accordance with DOT."

Social Security Rule 00-4p clarified the Social Security Administration's standards "for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs)." Policy Interpretation Ruling : Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info.

---

[1] DOT refers to the Dictionary of Occupational Titles, published by the United States Department of Labor, a source recognized by the regulations at 20 C.F.R, Pt. 404, Subpt. P, Appendix 2 § 200.00(b) (2012).

5

in Disability Decisions, SSR 00-4P (S.S.A Dec. 4, 2000). Specifically, the ruling "emphasize[d] that before relying on VE . . . evidence to support a disability determination or decision, [the] adjudicators must: [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Id.

Although the VE's testimony should be consistent with the DOT, when an unresolved conflict arises between the VE's evidence and the DOT, the ALJ

> must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Id. at *2. When a VE "provides evidence about the requirements of a job or occupation," the ALJ must "ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Id. at *4. In that situation, the ALJ must ask the VE "if the evidence he or she has provided conflicts with information provided in the DOT." If there appears to be a conflict between the VE's evidence and the DOT, the adjudicator must "provide a reasonable explanation for the apparent conflict." Id.

In this case, the ALJ specifically inquired of the VE whether his testimony had been "consistent to and in accordance with DOT?" R. 76. The VE confirmed his testimony was consistent with the DOT. Id. Therefore, the ALJ satisfied Social Security Ruling 00-4p's requirement to identify any conflicts. However, the ALJ continued and asked the VE

6

> [t]o the extent that it may be inconsistent with information contained in the DOT . . . is your testimony here today consistent with your experience in placing individuals in the enumerated jobs or your observations of the enumerated jobs, or your review of other vocational information concerning the performance of the enumerated jobs?

R. 77. The VE answered in the affirmative. Id. Social Security Ruling 00-4p does not require an ALJ to "conduct an independent investigation into the testimony of witnesses" nor is an ALJ required to explain how a conflict was resolved if "the plaintiff did not bring the vocational expert's mistake to the ALJ's attention." See Boggs v. Astrue, Civil Action No. 2:12-CV-25, 2012 WL 5494566 (N.D.W. Va. Nov. 13, 2012). Therefore, the ALJ fully complied with SSR 00-4p's requirements.

Smith argues that the ALJ must do more than ask the VE whether there are any inconsistencies. Instead, the ALJ, "*himself*, must identify, obtain a reasonable explanation, and explain how the conflict was resolved." Pl. Obj. 2. Although Smith cites several cases in support of his proposition, the cases are inapposite because they either stand for the proposition that the ALJ must inquire whether the VE's testimony is consistent with the DOT, which the ALJ did in this case, or the non-mandatory cited case law expands SSR 00-4p's requirements and case law in this circuit has not adopted an expansive reading of SSR 00-4p's requirements.[2]

---

[2] See Prochaska v. Barnhart, 454 F.3d 731, 735-36 (7th Cir. 2006) (determining that the ALJ failed to comply with SSR 00-4p because the ALJ did not ask the VE whether his testimony was consistent with the DOT); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005) (stating that the Third Circuit has adopted a "broader view of the ALJ's obligation to develop the record fully" than required by SSR 004-p; therefore, inconsistencies between VE testimony and DOT information may "run afoul" of the Third Circuit's law although complying with SSR 00-4p's obligation); Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2003) (concluding VE's testimony, by itself, does not provide substantial evidence regarding the number of jobs claimant can perform, but not applying SSR 00-4p because it was not yet enacted); Haddock v. Apfel, 196 F.3d 1094,

Although the Fourth Circuit Court of Appeals has not affirmatively answered this dispute, other courts in this circuit as well as other courts of appeals have held that SSR 00-4p is satisfied by the ALJ asking the VE if his testimony is consistent with the DOT. See Martin v. Comm'r, 170 F. App'x 369, 375 (6th Cir. 2006) (stating "[o]nce the ALJ asked the vocational expert if her testimony was consistent with the DOT, the ALJ satisfied its requirements under the SSR 00-4p."); Stephens v. Colvin, Civil Action No. 9:12-1376, 2013 WL 5440151, *8 (D.S.C. Sept. 27, 2013) (reversing the ALJ's decision because the ALJ "did not inquire on the record as to whether the VE's testimony was consistent with the DOT."); Lane, 2012 WL 1032705, *5 (reversing the ALJ's decision because he failed to inquire of the VE whether his testimony was consistent with the DOT). Accordingly, the ALJ fulfilled his duty pursuant to SSR 00-4p upon questioning the VE regarding any inconsistencies with the DOT.

### B. There is No Inconsistency Between the Position of Handwasher and Smith's RFC

Smith argues that the report and recommendation incorrectly concluded that no inconsistency between the position of handwasher and his RFC exists.

Although Smith did not object to the VE's testimony in his hearing, Smith now contends that as a handwasher he would be exposed to irritants, vibrations, and extreme temperatures, which conflicts with his RFC. The DOT describes the

---

1091 (10th Cir. 1999) (holding that an ALJ has a duty to "questio[n] a vocational expert about the sources of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations," but not applying SSR 00-4p because it was not yet enacted); Lane v. Astrue, No. 2:11cv6, 2012 WL 1032705, *5 (W.D.N.C. Mar. 9, 2012) (holding "[b]ecause the ALJ did not inquire on the record as to whether the vocational evidence was consistent with the DOT . . . the ALJ erred by relying on the testimony.").

8

"handwasher" position as:

> Washes articles, such as curtains, table linens, and lingerie by hand: Soaps and rubs articles, and rinses them in chemical solutions and clear water. Extracts excess moisture with hand wringer or tends small extractor . . . . Hangs articles on racks to dry. May immerse articles in tint or dye solutions to restore color. May operate small machines to wash articles. May wash and card blankets.

DOT 361.687-030. The position requires a reasoning level of two, a math and language level of one, and a "light work" strength level. The DOT also states that extreme cold and heat are "Not Present- Activity or condition does not exist." Additionally, vibration is "Not Present- Activity or condition does not exist" and toxic caustic chemicals are "Not Present- Activity or condition does not exist." The ALJ found that Smith could not perform his "various former jobs as a construction worker/laborer." However, the VE testified that an individual with Smith's age category, level of education, work experience and RFC could perform such "'light' exertional jobs as a handwasher, garment folder, and house cleaner." R. 25. The ALJ also found that the VE's testimony was consistent with the information contained in the DOT.

First, the ALJ found that Smith had a RFC to perform work activity that "requires no more than a 'light' level of physical exertion." R. 16. This is consistent with the DOT's definition of handwasher as requiring only a "light work" strength level. Second, the DOT states that extreme cold and heat, vibrations, and exposure to irritants are not present. Therefore, there is no conflict between Smith's RFC and the DOT.

Third, the DOT states that handwasher requires a reasoning level of two. A reasoning level of two requires "apply[ing[ commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal[ing] with problems involving a

9

few concrete variables in or from standardized situations." DOT 361.687-030. Case law in this circuit and other circuit courts frequently classify a reasoning level of two as encompassing "simple, routine and repetitive tasks . . . and [] only occasional decision making." See Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (holding there was no conflict between a reasoning level of three and the ALJ's conclusion that Plaintiff be limited to only "simple" work); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding a Plaintiff's RFC limitation of "requir[ing] [] simple and routine work tasks" was more consistent with a reasoning level of two); Money v. Barnhart, 91 F. App'x 210, 215 (3rd Cir. 2004) (finding a reasoning level of two does not "contradict the mandate that [Plaintiff's] work be simple, routine and repetitive."); Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, *9 (M.D.N.C. June 24, 2013) adopted by 2013 WL 4811705 (M.D.N.C. Sept. 9, 2013) (finding "a reasoning level of two[] is compatible with Plaintiff's limitations to performing S[R]RT's [simple, repetitive, routine tasks]); Mills v. Astrue, Civil Action No. 2:11-cv-65, 2012 WL 2030093, *21 (Apr. 9, 2012) adopted by 2012 WL 2030066 (stating "reasoning levels of 2 or 3 are consistent with Plaintiff's ability to perform simple, unskilled work"); Vallejo v. Astrue, Civil No. 3:10-CV-00445, 2011 WL 4595259, *13 (W.D.N.C. 2011) adopted by 2011 WL 4597348 (finding a reasoning level of two is consistent with a limitation to "simple, routine, repetitive tasks"). Accordingly, the position of handwasher is not inconsistent with Smith's RFC limitations.

Furthermore, assuming *arguendo*, there was an inconsistency, "[b]ecause [Smith] did not identify any conflict at the hearing, [he] would have to show that the conflict was 'obvious enough that the ALJ should have picked up on [it] without any assistance." Terry, 580 F.3d at 478 (citing Overman v. Astrue, 546 F.3d 456, 462-63

(7th Cir. 2008)). Smith's educational background and cognitive abilities appear to match the requirements of a reasoning level of two. Therefore, any conflict between a reasoning level of two and Smith's RFC limitations was "not so obvious that the ALJ should have pursued the question." Id.; see also Trim v. Colvin, No. 2:13-CV-13, 2013 WL 5540668, *5 (Oct. 8, 2013) ( reversing the ALJ's findings because the ALJ failed to further inquire into "*apparent* conflicts between the V.E.'s testimony and the DOT.") (emphasis added).

### C. The ALJ Properly Evaluated Smith's Credibility

Smith contends that the ALJ did not properly analyze his credibility under step two of Craig v. Chater and 20 C.F.R. § 404.1529(c).

This Circuit has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). First, the ALJ must determine if the plaintiff's medically documented impairments could reasonably be expected to cause the alleged symptoms. Id. at 594. Second, the ALJ must evaluate the subjective evidence, considering plaintiff's statements about "the intensity and persistence of the . . . pain, and the extent to which it affects [plaintiff's] ability to work." Id. at 595. The ALJ analyzes the second step "using statements from treating and nontreating sources and from the claimant." Felton-Miller v. Astrue, 459 F. App'x 226, 229 (citing 20 C.F.R. §§ 404.1529(a), 416.929(a) (2011)). The ALJ also considers additional "[f]actors in evaluating the claimant's statements including consistency in the claimant's statements, medical evidence, medical treatment history, and the [ALJ's] observations of the claimant." Id.

In this case, the ALJ concluded that Smith "has medically determinable

11

impairments that could reasonably be expected to cause some of the symptoms described, and . . . he does experience symptoms related to such impairments." R. 17. However, the ALJ discredited Smith's allegations of pain. First, the ALJ relied on Smith's testimony and written statements regarding his activities, including mowing his lawn, maintaining his own personal care, preparing his own meals, feeding his dog, watching television, talking with others on the telephone, completing house and yard work, enjoying fishing and spending time outdoors, and going to the grocery store once a week. R. 16-17. The ALJ, after evaluating Smith's activities, concluded that "The fact that a person can in effect do the aforementioned activities does not suggest total disability to the undersigned." R. 17.

Second, the ALJ reviewed Smith's drug addiction history. Prior to the accident, Smith used heroin and had been on a methadone program. R. 543. The ALJ noted that throughout the relevant time period of alleged disability, Smith "utilized potentially addictive methadone." R. 17. In reviewing the evidence, the ALJ determined that the "claimant had become dependent on methadone after the accident as he received his methadone from Russell Biundo, D.O." However, Smith testified that he "went 'cold turkey' off the methadone in 2007 and has not purportedly used it since then." But, medical records indicated that in 2008, Smith "attempted to obtain methadone or other narcotics from a neurologist under the guise that they previously helped his headaches." Upon reviewing the evidence, the ALJ noted that

> one may reasonable conclude that an individual who has demonstrated long-term reliance upon addictive medications is more likely than not to report such ongoing symptoms as will facilitate continued obtainment of such medications, even in the absence of actual symptoms of such debilitating severity as would warrant the need for such medications.

12

R. 17. Therefore, the ALJ considered Smith's long-term opiate use in evaluating the credibility of his subjective complaints.

Third, the ALJ completed a detailed review of Smith's medical treatment history and the medical evidence. Indeed, the ALJ's opinion presented a thorough summary of the medical evidence. The ALJ also noted inconsistencies between Smith's testimony and the objective medical evidence, including Smith's report on January 26, 2006 to Dr. Carson that "he was felling well and was currently home. . . [and] denied having any significant headaches, paresthesias, weakness, or seizures." R. 20. Accordingly, substantial evidence supported by the ALJ's finding that Smith was not "entirely credible" and therefore the ALJ was not required to "accept medical findings or opinions . . . based solely or primarily upon [] [Smith's] subjective complaints." R. 17.

## IV. Conclusion

Upon review of the above, it is the opinion of this Court that the Report and Recommendation should be, and is, hereby **ORDERED ADOPTED**. For the reasons more fully stated in the Report and Recommendation, this Court **ORDERS** that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**. Accordingly, this Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be **STRICKEN FROM THE DOCKET OF THIS COURT**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: November 8, 2013

                                                       GINA M. GROH
                                                       UNITED STATES DISTRICT JUDGE